UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMARCUS T. YOUNG #753683,

            Plaintiff,

   v.

JOHN HALL, et al.,

            Defendants.

_____/

Case No.    2:19-cv-00050

Hon.   Paul L. Maloney
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### I.  Introduction

This is a civil rights action brought by state prisoner DeMarcus T. Young pursuant to 42 U.S.C. § 1983.   Young is incarcerated at the Chippewa Correctional Facility (URF).   Young asserts constitutional violations against retired Quartermaster Hall and Nurse Practitioner (NP) Wilson.   Young says that he was denied special accommodation shoes for 55 days.

It is undisputed that Young needed custom-made shoes with a wider toe box. Young argues that the Defendants retaliated against him by giving him improperly fitting shoes, in violation of the First Amendment, because he would not sign off on his grievance.   He also says that the denial of appropriate shoes caused him pain and injury, in violation of his rights under the Eighth Amendment.   Young argues that Defendants' actions violated his rights under the equal protection clause of the Fourteenth Amendment because other prisoners were able to obtain appropriate clothing.

- 1 -

Defendants argue that Young was provided with appropriate medical care for his feet and issued a special accommodation for shoes with a wider toe box. Defendants further argue that after Young's feet were measured, the shoes were ordered, custom made, and delivered to Young in a timely manner.  In addition, Defendants argue that Young did not have a special need for athletic shoes or winter boots.

Defendants have filed motions for summary judgment.  (ECF Nos. 49 (NP Wilson's motion) and 52 (Quartermaster Hall's motion).)  Young has filed responses (ECF Nos. 58 and 59) and a declaration (ECF No. 61).  Defendant Wilson filed a reply.  (ECF No. 60.)  It is respectfully recommended that the Court grant Defendants' motions for summary judgment and dismiss this case.

## II.  Factual Allegations

Young received a special accommodation for shoes with a wide toe box on September 21, 2017.[1]  (ECF No. 1-1, PageID.19.)  About three months later, on December 25, 2017, Young complained that he was experiencing pain in his feet. (*Id.*)  Young says he was seen by someone from healthcare, possibly "Mary", who told him that he was too young to be complaining and all she could do was to give him Tylenol and schedule him to see a doctor.  (*Id.*)

Many months later, on August 15, 2018, Young filed a grievance against Quartermaster Hall for failing to provide special accommodation shoes.  (*Id.*)

---

[1]    Medical records indicate that Young received these shoes on October 4, 2017. (ECF No. 51, PageID.325 (medical record filed under seal).)

Young visited Quartermaster Hall on August 17, 2018.   (*Id.*, at PageID.20.)   At that time, Hall provided Young with used, state-issued shoes that were not custom-made despite the special accommodation order.   (*Id.*)   When Young told Hall that the shoes were too tight and small, Hall disregarded the complaint, allegedly because of the grievance that Young had filed.   (*Id.*)

Young complained to health care the next day and was told that Quartermaster Hall would contact him about new shoes.   (*Id.*)   When Young went to get his new shoes on September 10, 2018, he waited for nearly one hour, only to be told by Hall that his new shoes had not arrived and that he should wear two pairs of socks to alleviate the pain caused by his ill-fitting shoes.   (*Id.*)

Young finally received his shoes on October 12, 2018.   (*Id.*)   Young asserts that he was forced to wear shoes that did not fit him properly for 55 days. (*Id.*)

Young asserts that he submitted grievances on August 25, 2018, against the medical department for failing to provide him with adequate shoes, and on December 27, 2018, against NP Wilson because he was denied gym shoes, boots, and adequate shoes.   (*Id.*, PageID.21.)   Young says that on January 22, 2019, he filed a grievance on Wilson and Hall for failing to provide him with adequate shoes and boots.   (*Id.*) In February of 2019, Young was told that he would not receive gym shoes or winter boots because the MDOC does not provide those to prisoners.   (*Id.*)   Only prisoners who work on yard crews may receive boots.   (*Id.*)   Young says that he fears that he could damage his special accommodation shoes if he uses them for exercise, and for that reason he does not exercise or engage in recreational activities.   (*Id.*,

PageID.22.)    Young says he was told that if he damaged his shoes, he would receive a major misconduct ticket. (*Id*.)    Young asserts that he needs boots because his feet are exposed to cold and harsh weather during the winter months.    (*Id*.)

### III.    Summary of Medical Records

Young was examined on August 18, 2017, by Nurse Moser at the Alger Correctional Facility (AMF) and given Tylenol for complaints of pain in his feet. (ECF No. 51, PageID.311.)    Nurse Moser referred Young to the medical provider. (*Id*.)    Young was transferred to URF on August 23, 2017.    (*Id*., at PageID.314.)

Dr. Canlas, M.D., examined Young on August 25, 2017, for plantar pressure pain and ordered x-rays.    (*Id*., PageID.315-316.)    The x-rays revealed mild deformities in Young's right and left toes.    (*Id*., PageID.317.)

On September 7, 2017, Dr. Canlas reviewed the x-ray results with Young and provided Young with a topical ointment to be used as needed. (*Id*. PageID.319-320.) Dr. Canlas requested a medical special accommodation for wide toe box shoes.    (*Id*., PageID.321.)    The request was approved. (*Id*.)    Young's feet were measured, and new shoes were ordered.    (*Id*., PageID.324.)

On October 4, 2017, a Soap (subjective objective assessment plan) Note, with NP Susan Wilson listed for the first time as the provider, indicated that Young tried on "state shoes" but they were returned after it was determined that they did not fit well.    (*Id*., PageID.325.)

On November 28, 2017, Young complained of back pain after working out, numbness in his right foot, and swelling in his right toe. (*Id*., PageID.326-327.)    A

nurse provided Ibuprofen for pain.    (*Id.*)    Young was examined by a nurse on December 12, 2017, and reported that he was no longer in pain.    (*Id.*, PageID.328.) On December 26, 2017, Young was examined by nurse for back and foot pain.    (*Id.*, PageID.330-331.)

On March 2, 2018, Young requested replacement shoes and was told that new shoes would be ordered. (*Id.*, PageID.332-333.)   On March 20, 2018, after Young complained that he had not received new shoes, he was told by a nurse that he would receive them "as soon as we get them" and told to "be patient."   (*Id.*, PageID.334.)

On May 31, 2018, Young was examined by NP Wilson when he presented with a rash.   (*Id.*, PageID.335-336.)

On July 25, 2018, Young requested new medical shoes and was told by a nurse to contact the Quartermaster:

> Medical Question
> Patient Complaint/Concern: shoes.
>
> Detail: "I need some more medical shoes. My old one a buster open and my feet expose".
>
> Assessment/Plan: Please see the Quarter Master for assistance with shoes. I have attached a copy of your accomodation to bring to them. Thank you.

(*Id.*, PageID.337.)

After Young received his new, custom-made medical shoes, he was again examined by Defendant Wilson for a rash on December 27, 2018.    (*Id.*, PageID.338.) When Young attempted to discuss other issues and grievances, Wilson informed Young that "those issues can be addressed by the MDOC grievance and lawsuit policy chain."   (*Id.*, PageID.338-339.)   After this complaint was filed in February of 2019, NP Wilson examined Young for a rash on June 25, 2019.   (*Id.*, PageID.340-341.)

On July 11, 2019, Young requested medical care for his foot due to pain and he was examined on July 15, 2019.   (*Id.*, PageID.342-43.)   On July 18, 2019, Dr. Timothy Stallman, D.O., examined Young for complaints in both feet.   (*Id.*, PageID.344-345.)   Dr. Stallman recommended that Young make a request to the Quartermaster to measure his "feet standing and with two pair of stockings for proper fit." (*Id.*, PageID.345.)

## IV.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V.  Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the

> plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted

with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727

(6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

## VI.  Analysis

It is undisputed that Young had a special accommodation for custom-made shoes with a wide toe box. Young argues that he was denied adequate shoes, in violation of his Eighth Amendment rights, because it took too long for him to obtain his custom-made shoes – 55 days – while he was forced to wear shoes that caused him pain, and denied athletic shoes and winter boots.

### A.  Quartermaster Hall

Young argues that Quartermaster Hall delayed providing special accommodation shoes and provided him with standard shoes that did not fit him. Young received new custom-made shoes on October 12, 2018.

A special accommodation for shoes is based upon a medical need and is issued by medical staff. As Quartermaster, Hall did not have authority to issue a special

accommodation for shoes.    (ECF No. 53-3, PageID.381.)    Hall issued a callout for Young to go to the Quartermaster office on August 17, 2018, so that Young could be fitted for his special accommodation shoes.[2]    (Id.)

At that time, Hall noted that Young's shoes were in a state of disrepair and needed to be replaced immediately because they were not functional.    (Id.)    Hall provided Young with standard size shoes that were as close as possible to Young's size that he had available.    (Id.)    These shoes were temporary replacement shoes until Young's custom-made shoes were delivered to the prison.[3]    (Id.)

On September 10, 2018, Young came to the Quartermaster's office and was told that his shoes had been ordered, but they had not yet been received.[4]    (Id., at PageID.382.)    Young believes that Quartermaster Hall had special accommodation shoes that fit him but refused to provide those shoes because of Young's grievances. Young has presented no evidence to support this claim other than his declaration affirming this belief.    (ECF No. 61.)    The custom-made shoes were provided to Young on October 12, 2018.    (ECF No. 53-3, PageID.382, 392.)

---

[2]      A "callout" is used by the MDOC to allow prisoner movement within the prison and to maintain accountability for a prisoner's location.

[3]      Young argues that his shoe size should have been on file, and he should not have been called out until his special accommodation shoes were available.    (ECF No. 61, PageID.450-451.)

[4]      Young says that he was called-out by Defendant Hall and waited in line for 30 minutes only to have Defendant Hall shut the window to make him wait another 20 minutes before he was told that his shoes "were not yet unless I signed off the grievances."    (ECF No. 61, PageID.451.)    Defendant Hall says that "Young came to the Quartermaster's office" and was told that his shoes had not been received on September 10, 2018.    (ECF No. 53-3, PageID.382.)    At that time, Hall says he attempted to resolve the August 15, 2018, grievance with Young.    (Id.)

Quartermaster Hall states that the delay that Young experienced in obtaining his shoes was due to the requirement that custom-made shoes had to be ordered, requiring "considerable lead time" because they had to be made to fit.   (ECF No. 53-3, PageID.380-381.)   In the opinion of the undersigned, the record before the Court fails to show a genuine issue of material fact as to whether Quartermaster Hall was deliberately indifferent to Young's need for a special accommodation shoe. Quartermaster Hall measured Young's feet, ordered the shoes, and, after he received them, he gave them to Young.   The short delay of 55 days – August 17 to October 12, 2018 – to make and deliver special accommodation shoes was not due to actions taken by Quartermaster Hall.   The shoes ordered for Young were size 9-1/2, 3E width. (*Id.*, PageID.392.)   Young has failed to show that once the order was placed, Hall had any control over when the shoes would be received at the prison.   This failure is fatal to Young's claim.   *See Barnett v. Hill*, No. 2:12-CV-2, 2012 WL 669836, at *5 (W.D. Mich. Feb. 29, 2012) (ruling that plaintiff failed to state a claim against MDOC employee because plaintiff failed to allege facts suggesting that once order for prescriptive shoes was place, that defendant had any control over when the shoes would be received).   In addition, Young has presented no verifying medical evidence showing that the short delay in receiving his prescribed shoes caused any detrimental effect on his medical condition, as required by *Napier* and *Blackmore*.

Similarly, Quartermaster Hall could not have violated Young's Eighth Amendment rights by providing him with off-the-shelf, standard issue shoes until his custom shoes could be made.   Quartermaster Hall gave Young the shoes that he had

in stock that were the closest fit to Young's shoe size.    (ECF No. 53-3, PageID.381.)

Young complained that they caused pain because they did not fit properly.    The

shoes that Hall provided were temporary; Young was to receive his custom-made

shoes once they were sent to the prison.    (*Id.*)    Under these circumstances, the act

of giving Young temporary shoes, even if they did not fit properly, did not violate

Young's Eighth Amendment rights.    *See Jones v. Hood*, No. 06-11925-BC, 2006 WL

1984274, at *6 (E.D. Mich. July 13, 2006) (ruling that "Plaintiff's medical needs were

clearly not serious enough to require immediate medical attention because there was

no indication that Plaintiff was deprived of the 'minimal civilized measure of life's

necessities'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and collecting cases).

"[T]he Constitution does not mandate comfortable prisons."    *Rhodes v. Chapman*,

452 U.S. 337, 349 (1981).

> But conditions that cannot be said to be cruel and unusual
> under contemporary standards are not unconstitutional.
> To the extent that such conditions are restrictive and even
> harsh, they are part of the penalty that criminal offenders
> pay for their offenses against society.

*Id.* at 347.

Finally, Quartermaster Hall could not violate Young's Eighth Amendment

rights by failing to provide him with athletic shoes or winter boots.    Hall could not

provide athletic shoes or winter boots to prisoners unless they had a medical

accommodation for specific shoes or needed winter boots because they worked outside

in the prison yard.[5]   (ECF No. 53-3, PageID.382.)   As previously stated, Hall did not have the authority to issue special accommodations for shoes.

Accordingly, the undersigned concludes that the record in this case fails to establish a genuine issue of material fact as to Young's deliberate indifference claim against Quartermaster Hall.

### 2.  NP Wilson

Nurse Practitioner Wilson had limited involvement in Young's medical care as a medical provider and treated Young for a rash.   (*See* ECF No. 51, PageID.338-41 (sealed medical records documenting Young's appointments with Wilson on Dec. 27, 2018 and June 25, 2019).) There exists no evidence that Defendant Wilson was involved in delaying Young's receipt of special accommodation medical shoes.

The medical record supports the conclusion that medical staff treated Young for his complaints of foot pain and provided him with a special accommodation for shoes with a wide toe box.

Young also says that Defendant Wilson denied him a special accommodation for winter boots and athletic shoes.   However, the medical record does not support this claim.   There exists no evidence in the record that Defendant Wilson was involved in denying any special accommodation for any type of shoes for Young. Moreover, there exists no evidence in the record that supports Young's claim that he

---

[5]    Young says he is indigent and cannot afford to purchase his own shoes.   (ECF No. 61, PageID.451.)

had a need, protected under the Eighth Amendment, for winter boots or athletic shoes.

Young stated that he preferred winter boots for walking outside and athletic shoes for engaging in recreational activities.   (ECF No. 49-4, PageID.259-260.)    As noted above, to support a violation of the Eighth Amendment the deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.    The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."    *Id.* at 348 (citation omitted).    "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."    *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).    Mere discomfort or temporary exposure to cold weather is not enough to invoke the protections of the Eighth Amendment. *Howard v. Management and Training Corp.*, 2018 WL 5830857, *5 (N.D. Ohio, November 7, 2018) (claim for more comfortable boots due to cold weather was insufficient to establish a violation of Eighth Amendment which requires exposure to extremely cold temperatures for extended periods of time and not mere discomfort from the cold weather).    Similarly, canceling an accommodation for more comfortable gym shoes was not a serious deprivation when other state issued shoes were available.    *See Jones*, 2006 WL 1984274, at *6.

Thus, the undersigned concludes that the record in this case fails to establish a genuine issue of material fact as to Young's deliberate indifference claim against NP Wilson.

## VI.  Retaliation

Young argues that Defendant Hall retaliated against him by calling him out on August 17, 2018, to measure his feet, by giving him temporary replacement shoes, by calling him out on September 10, 2018, to inform him that his shoes had not been delivered, and by delaying his receipt of his special accommodation shoes.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:   (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*   Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399 (internal citation omitted).

In the opinion of the undersigned, the call-outs issued to Young on August 17, 2018, and September 10, 2018 do not constitute an adverse action that was taken against Young that would deter a person of ordinary firmness from engaging in that conduct, which is the second element of a retaliation claim.   Assuming the facts most favorable to Young – i.e., that Quartermaster Hall called Young to his office even though Hall had not received Young's custom-made shoes [6] – the undersigned concludes that these call-outs were de minimis in nature.   "[S]ome adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury."   *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018).   Moreover, it is difficult to see how this action by Hall would deter a person of ordinary firmness from filing grievances.

Further, the record establishes that Defendant Hall gave Young temporary replacement shoes (ECF No. 1-1, PageID.20, ECF No. 53-3, PageID.381) until his custom-made shoes arrived at the prison and that the delay in receipt of these shoes was not due to any action by Defendant Hall, but simply due to the fact that the shoes had to be custom-made to fit Young.   In the opinion of the undersigned, Defendant Hall established that he would have taken the same actions – measuring Young's feet and ordering the shoes – despite Young's grievance filing.

---

[6]   Defendant Hall does not state whether he called-out Young on September 10, 2018, but his affidavit implies that Young came to see him.   The Court should accept the facts in the light most favorable to the non-moving party and assume for purposes of this motion that Defendant Hall called-out Young.

Young asserts that the September call-out was a retaliatory act due to his grievance filing.   Hall asserts that when Young came to see him, he informed Young that his shoes were ordered but had not yet been received.   At that time, Hall attempted to resolve the August 15, 2018, grievance with Young.   Although, Young argues that he believes that Hall had his special accommodation shoes but refused to give them to him because of the grievance, there exists no evidence in the record to support Young's belief.   In the opinion of the undersigned, Young has failed to support his claim that the call-out on September 10, 2018 was an adverse action.

Finally, Young's claim that Defendant Hall retaliated against him by delaying his delivery of the custom-made shoes to Young is not supported by any competent evidence.   Rather, the evidence shows that Defendant Hall measured Young's feet on August 17, 2018.   He then ordered the custom-made shoes and gave Young the shoes on October 12, 2018.   The shoes ordered for Young were size 9-1/2, 3E width. (ECF No. 53-3, PageID.392.)   Young lacks proof that these custom-made shoes arrived at the prison well before their delivery to him. Young's claim of a retaliatory delay is based solely on speculation.

Thus, the undersigned concludes that the record in this case fails to establish a genuine issue of material fact as to Young's retaliation claim against Quartermaster Hall.

## VII.   Equal Protection

Defendants argue that Young failed to support any alleged violation of his equal protection rights.   The Equal Protection Clause of the Fourteenth Amendment

provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).   To establish a cognizable equal protection claim, plaintiffs must show "that they were 'intentionally singled out by the government for discriminatory adverse treatment.'"   *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)).

"A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will."   *TriHealth, Inc.*, 430 F.3d at 788 (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710–11 (6th Cir. 2005)).   In "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564.   "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory ... is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate

- 20 -

against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily.").

Young alleges that he was denied adequate clothing – boots and athletic shoes – while other similarly situated prisoners with medical needs were given appropriate clothing.   (ECF No. 1, PageID.13.)   He appears to allege that he is a "class of one" plaintiff and that his disparate treatment is a result of the animus Defendants had for him because he had filed grievances.   But a review of Young's allegations and evidentiary support in the record shows that Young failed to identify similarly-situated prisoners or a class of prisoners who were treated differently.   As noted above, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."   *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).   Young's complaint fails that standard.

Further, Young has provided no evidentiary support for his claims.   Despite his claim of disparate treatment, Young admitted that other prisoners do not receive medical detail for boots.

> Q.   And you've seen other prisoners get medical details for winter boots?
> A.   No, I haven't seen other prisoners get winter boots from medical.
> Q.   But that's something that you were looking for from Ms. Wilson; is that right?
> A.   Yes, ma'am.

(ECF No. 49-4, PageID.260.)

- 21 -

Young has presented no evidence to support his claim that other similarly situated prisoners received boots or athletic shoes from the Quartermaster or medical staff.   In the opinion of the undesigned, the record before the Court fails to establish a genuine issue of material fact as to Young's equal protection claim.

## VIII.   Official Capacity Claims

To the extent that Plaintiff is suing Defendant Hall in his official capacity, such claims are barred by the Eleventh Amendment.[7]   The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.   *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).   To

---

[7]    Young sues Defendants in both their individual and official capacities.   (ECF No. 1, PageID.2.)   Only Defendant Hall moves to dismiss the claim against him in his official capacity.

- 22 -

the extent that Young seeks money damages, costs and fees from Defendant Hall in his official capacity, that part of his lawsuit is barred by sovereign immunity.[8]

## IX.  Qualified Immunity

As an alternative argument, Defendant Hall moves to dismiss Young's damages claims by asserting qualified immunity from liability.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he

---

[8]      "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."  *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).   Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."  *Id*. Dykes-Bey does not seek prospective relief.

confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the undersigned's opinion Defendant Hall is entitled to the defense of qualified immunity from liability. Young has failed to show that Defendant Hall acted with deliberate indifference towards his medical needs, failed to protect him from a known harm, or subjected him to conditions of confinement that violated the Eighth Amendment, or retaliated against him in violation of the First Amendment, or violated his Fourteenth Amendment equal protection rights.[9]

---

[9]    Defendant Wilson also argues that Young failed to exhaust his administrative remedies against her by exhausting his claims in a grievance at each step of the grievance process.   (ECF No. 49, PageID.249-251.)    Defendant Wilson relies on one

## X.  Recommendation

It is respectfully recommended that the Court grant Defendants' motions for summary judgment (ECF Nos. 49 and 52) and dismiss this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:     December 9, 2020                        /s/ *Maarten Vermaat*
                                                              MAARTEN VERMAAT
                                                              U.S. MAGISTRATE JUDGE


---

grievance – URF-19-01-0003-28I – filed by Young that she argues was procedurally defaulted because it was rejected.   (*Id.*, PageID.250.)

However, Young presented another grievance – URF-19-01-0256-3H – that he exhausted through Step III of the grievance process.   (ECF No. 58-1, PageID.431-432.)   Young attached his Step I grievance and the Step III response to his brief.

Unfortunately, the Step I grievance document is barely legible due to poor copy quality.   Defendant Wilson argues that the grievance was not against her because she never received a copy from the MDOC.   (ECF No. 60, PageID.447-448.)   It appears from what is legible, that Defendant Wilson was named at Step I and the grievance discusses "feet," "cold weather," and "winter boots."   Without a better response from Defendant Wilson – a legible copy of the grievance and an argument based on the content of the grievance – it appears that at least a genuine issue of fact exists regarding this issue.   Therefore, the Court declines to make a dispositive recommendation at this time regarding this issue because Defendant Wilson has not met her burden of showing that Young failed to exhaust his administrative grievances based upon the record before the Court.

- 25 -